## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILDRED PEREZ,** | : | **Civil No.  1:20-CV-1628** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

A recurring issue in Social Security appeals involves judicial assessment of an Administrative Law Judge's (ALJ) evaluation regarding how a claimant's obesity may have exacerbated other medical impairments. With respect to this recurring issue, the adequacy of the ALJ's analysis is judged by a deferential standard of review, but the courts have imposed a clear burden of articulation upon Administrative Law Judges (ALJs) in order to facilitate this review. In this particular setting, this articulation responsibility means that the ALJ's decision should at least

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

acknowledge and address a claimant's obesity when that medical complication may compound other medical impairments and affect employability.

We are reminded of this familiar principle in the instant case. On November 6, 2017, Mildred Perez applied for disability and supplemental security insurance benefits, alleging that she was disabled as of March 31, 2015 due to hip necrosis[2] and limb-girdle muscular dystrophy.[3] In addition to presenting with these severe impairments, Perez suffered from obesity, with medical records revealing that Perez, who was 5'2", consistently weighed 200 pounds or more and had a Body Mass Index (BMI) in excess of 36.

In the decision denying Perez's disability claim, the ALJ found that Perez could perform a limited range of sedentary work. (Tr. 28). While this decision

---

[2] Necrosis is the death of bone tissue due to a lack of blood supply. Also called osteonecrosis, it can lead to tiny breaks in the bone and the bone's eventual collapse. https://www.mayoclinic.org/diseases-conditions/avascular-necrosis/symptoms-causes/syc-20369859. Some studies have  suggested that obesity may be a risk factor for femoral necrosis. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4369691/.

[3] Limb-girdle muscular dystrophy (LGMD) is a diverse group of disorders with many subtypes categorized by disease gene and inheritance which usually manifests weakness and impairment in the proximal muscles around the hips and shoulders. https://www.mda.org/disease/limb-girdle-muscular-dystrophy. Weight-reduction or weight-stabilization diet is recommended for some people suffering from LGMD because being markedly overweight puts greater stress on already-weakened muscles. https://www.mda.org/disease/limb-girdle-muscular-dystrophy/medical-management.

2

acknowledged that Perez's necrosis and limb girdle muscular dystrophy were severe impairments that confined her to a very limited range of sedentary work, that decision made no mention whatsoever of her obesity, a condition which was amply reflected in medical records and would have compounded the effect of these other impairments. Likewise, the state agency expert opinion the ALJ found persuasive documented that Perez was obese but made no mention of this fact when listing her impairments and concluding that she could perform sedentary work. Given the complete silence on this score, we are unable to determine whether the ALJ failed to recognize the significance of Perez's obesity or considered, but rejected, any disabling effect of this condition. Therefore, we conclude that the ALJ's burden of articulation has not been met in this appeal, and recommend that the district court remand this case for further consideration and evaluation of the potential effect of Perez's obesity.

## II.     Statement of Facts and of the Case

On November 6, 2017, Mildred Perez applied for disability and supplemental security insurance benefits, alleging that she had become disabled in March of 2015 due to avascular necrosis of the hips and limb girdle muscular dystrophy. (Tr. 26). Perez was born in 1971, was 43 years old at the time of the alleged onset of her disability, and had prior employment as an insurance agent and secretary. (Tr. 31-

32). The ALJ found that Perez's avascular necrosis of the hips and limb girdle muscular dystrophy were well documented in Perez's treatment records and were severe impairments. (Tr. 26-31).

In addition to these severe impairments, the medical record revealed that Perez suffered from obesity throughout the time period encompassed by this disability application. For example, on April 16, 2016, during an emergency room treatment encounter, it was determined that Perez was 5'2", weighed 200 pounds, and had a Body Mass Index or BMI of 36.57 kg/m2. (Tr. 383).[4] On March 3, 2017, when Perez complained of severe back pain radiating down her legs, depression, and sleep disturbance, she weighed 201 pounds and had a BMI of 36.76 kg/m2. (Tr. 1477). At that time, Perez was referred to an orthopedist and a neurologist for further treatment. (Tr. 1478). During a neurological evaluation on August 16, 2017, Perez described experiencing progressive weakness and it was determined that she weighed 203 pounds with a BMI of 37.22 kg/m2. (Tr. 871).

Likewise, the February 27, 2018 report of the state agency expert, Dr. Brown, documented Perez's persistent obesity, noting BMIs which, over time, ranged

---

[4] Body mass index (BMI) is a measure of body fat based on height and weight that applies to adult men and women. Michael v. Berryhill, No. 3:16-CV-00658, 2018 WL 279095, at *9 (M.D. Pa. Jan. 3, 2018). A BMI of 30 or greater is considered obese. https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html

between 36 and 37. (Tr. 74). However, the doctor's analysis of Perez's disability claim, which the ALJ found to be "generally persuasive," (Tr. 31), did not account for this obesity or its impact upon Perez's necrosis and muscular dystrophy.

It is against the backdrop of this evidence that the ALJ conducted a hearing in Perez's case on February 25, 2019. (Tr. 39-64). Perez and a vocational expert both testified at this hearing. Following this hearing on March 22, 2019, the ALJ issued a decision denying Perez's application for benefits. (Doc. 23-33). In that decision, the ALJ first concluded that Perez met the insured status requirements of the Act. (Tr. 25). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Perez's hip necrosis and limb girdle muscular dystrophy were severe impairments. (Tr. 26). At Step 3, the ALJ determined that Perez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 27-28).

The ALJ then concluded that Perez retained the residual functional capacity to do an extremely limited range of sedentary work. (Tr. 28). In reaching this result, the ALJ concluded that the opinion of the state agency expert, Dr. Brown, who found that Perez could perform some sedentary work was "generally persuasive." (Doc. 31). Yet, while Dr. Brown's report documented Perez's persistent obesity, noting BMIs which, over time, ranged between 36 and 37, (Tr. 74), neither the report relied

5

upon by the ALJ nor the ALJ's decision itself made any mention of Perez's obesity whatsoever. Thus, there was a failure to address, analyze, or even acknowledge this condition in both the expert's report and the ALJ's decision.

The ALJ found that Perez could not perform her past work, but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 31-33). Having reached these conclusions, the ALJ determined that Perez had not met the demanding showing necessary to sustain her claim for benefits and denied this claim. (Tr. 33).

This appeal followed. (Doc. 1). On appeal, Perez argues, inter alia, that the failure to address, or even acknowledge, her obesity in this decision requires a remand. On the unusual facts of this case, where the expert opinion relied upon by the ALJ recited that Perez consistently had BMIs that placed her in the obese range, yet neither the expert nor the ALJ acknowledged this fact, we agree that the ALJ's burden of articulation has not been fully met in this appeal, and recommend that the court remand this case for further consideration of this issue.

## III.  <u>Discussion</u>

### A.  <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

8

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B.** **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

10

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be

set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113,

129 (3d Cir. 2002); <u>see also</u> <u>Metzger v. Berryhill,</u> No. 3:16-CV-1929, 2017 WL

1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub</u>

<u>nom. Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21,

2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D.

Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018

WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating

the existence of a medically determinable impairment that prevents him or her in

engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show

that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that

determination entails an assessment of what work the claimant can do given the

physical limitations that the claimant experiences. Yet, when considering the role

and necessity of medical opinion evidence in making this determination, courts have

followed several different paths. Some courts emphasize the importance of medical

opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here,  where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In

this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

14

Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.  Legal Benchmarks for Assessing a Claimant's Obesity

The interplay between this deferential substantive standard of review, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is aptly illustrated by those cases which consider analysis of the compounding effect of obesity upon disability claimants. In this regard, the leading case addressing this issue is Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d Cir. 2009). In Diaz, the ALJ found at Step 2 of the analytical process that Diaz's obesity was a severe impairment, but then neglected to address the exacerbating effect of this condition at Step 3 or in any other subsequent steps in the disability analysis.

On these facts, the Court of Appeals remanded the case for further consideration by the Commissioner and provided guidance regarding the duty of articulation required from ALJs in this setting. Thus, the Court of Appeals explained

that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504. Moreover, the ALJ's responsibility to consider a claimant's obesity does not turn on whether the claimant has specifically cited obesity as an impairment. As the Court of Appeals observed: "references to obesity in the doctors' reports were sufficient to put the ALJ on notice of the impairment." Id.

While imposing this responsibility of articulation upon ALJs, the appellate court did not endeavor to impose some strict formulaic requirements upon these administrative adjudicators. Quite the contrary, the Court made it clear that "[t]he ALJ, of course, need not employ particular 'magic' words: '[Case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.' " Diaz, 577 F.3d at 504 (citations omitted). The Court of Appeals also made it abundantly clear that its decision related to the ALJ's duty to adequately articulate the rationale underlying any decision denying benefits and did not in any way alter the very deferential substantive standard of review in these cases. As the Court noted,

> Were there *any* discussion of the combined effect of [obesity upon] Diaz's impairments, we might agree with the District Court [and affirm the ALJ decision]. However, absent analysis of the cumulative impact

16

> of Diaz's obesity and other impairments on her functional capabilities,
> we are at a loss in our reviewing function.

*Diaz,* 577 F.3d at 504 (emphasis in original). By noting that "*any* discussion of the combined effect of [obesity upon] Diaz's impairments" would have been sufficient, the appellate court underscored the continuing vitality of the deferential standard of review that applies in these cases.

Thus, fairly construed, Diaz holds that in cases where a claimant's obesity may exacerbate her other impairments there is a basic duty of articulation that is owed the claimant, explaining how that obesity affects the issue of disability. However, once that duty of articulation is met, the substantive standard of review remains highly deferential. Applying this analytical paradigm, following Diaz it has been held that a single cursory assurance that an ALJ has considered a claimant's obesity may be insufficient to satisfy the requirement that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504; see also Sutherland v. Berryhill, No. 3:17-CV-00124, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), report and recommendation adopted sub nom. Sutherland v. Berryhill, No. CV 3:17-0124, 2018 WL 2183359 (M.D. Pa. May 11, 2018). Thus, there is a rising tide of case law which holds that the failure to acknowledge or address obesity when that condition is

material to a disability determination is error and compels a remand. See e.g., Spinelli v. Comm'r of Soc. Sec., No. CV 18-10504 (JMV), 2019 WL 2960671, at *3 (D.N.J. July 9, 2019)(collect9ng cases); Garcia-Estrada v. Comm'r of Soc. Sec., No. CV 16-2037 (JLL), 2017 WL 498714, at *4 (D.N.J. Feb. 7, 2017)(same).

While Diaz and its progeny typically involve cases in which a claimant's obesity is acknowledged by the ALJ as a severe impairment at Step 2, but the ALJ then fails to further discuss this condition, we believe that the logic of this decision would also extend to the unusual scenario presented here, where medical records and the opinion of the state agency expert whose judgment was found persuasive by the ALJ identify the plaintiff's BMI as falling within the range of obesity, yet neither the expert nor the ALJ address, analyze or even acknowledge this condition. In adopting this approach, we are acting in accordance with the agency's own guidance in this field which instructs ALJs to make a threshold determination regarding whether obesity is a medically determinable impairment and states that: "We will consider the individual to have obesity as long as his or her weight or BMI shows essentially a consistent pattern of obesity." Titles II & XVI: Evaluation of Obesity, SSR 02-1P 2002WL 34686281 at *4 (S.S.A. Sept. 12, 2002).

It is against these benchmarks that we assess this appeal.

**D.**     **This Case Should Be Remanded.**

Mildred Perez's case involves an unusual constellation of circumstances. Perez was undeniably obese at the time of her disability application. Indeed, the state agency expert whose opinions was relied upon by the ALJ in denying this application documented BMIs that recorded her persistent obesity. Despite this undisputed fact, that state agency expert, Dr. Brown, failed to analyze, address, or even acknowledge Perez's obesity in opining that she could perform sedentary work notwithstanding her severe impairments of hip necrosis and limb girdle muscular dystrophy.  The ALJ, in turn, found Dr. Brown's opinion generally persuasive and relied upon that opinion in a decision denying benefits to Perez, but that ALJ's decision was also completely silent with regard to her clinically well-documented obesity.

Recognizing that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments," when that obesity is material to a disability determination, <u>Diaz</u>, 577 F.3d at 504, and acknowledging that  "references to obesity in the doctors' reports were sufficient to put the ALJ on notice of the impairment," <u>id</u>., we conclude that Dr. Brown erred in failing to acknowledge this impairment, an error that led to ALJ to also fail to adequately address this condition. For its part, the Commissioner attempts to

distinguish <u>Diaz</u> and its progeny, by relying on <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005) to argue that a "generalized" claim of disability based upon obesity fails when there is no showing that a claimant's obesity would have affected the claimant's ability to work.

We concede that a claimant's obesity must be causally linked to a claim of disability in some specific way, and a generalized assertion of disability based upon obesity that is not tied in some logical way to the claimant's other impairments is insufficient to require a remand. Yet, while we consider this a close case, we find that there is a sufficient causal connection between Perez's obesity and her other severe impairments to require further consideration of this Social Security appeal. It is uncontested that Perez suffers from hip necrosis and limb girdle muscular dystrophy, two medical conditions that are exacerbated by and associated with obesity.[5] In this setting, common sense suggests that Perez's obesity may compound the severity of these conditions. Therefore, some consideration of this obesity was warranted here, and the complete failure to address this condition calls for a remand of this case.

Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we

---

[5] See Footnotes 2 and 3, infra.

20

reach this result, we note that nothing in this Report and Recommendation should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand. Further, having found that a remand is justified on these grounds, we have not addressed any other claimed errors because the ALJ may in the first instance address them upon remand. See McMillan v. Comm'r of Soc. Sec., No. 16-313, 2018 WL 6617841, at *4 (D.N.J. Dec. 18, 2018) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider the plaintiff's severe obesity impairment at the third step and the fifth step, and thus the Court "need not consider Plaintiff's other arguments at this juncture"); see also Lawrence v. Colvin, No. 15-2851, 2016 WL 1644622, at *10 (D.N.J. Apr. 26, 2016) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider one of the claimant's disabilities, and thus the ALJ would be required to engage in an entirely new evaluation concerning the claimant's other alleged severe disabilities).

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMENDED that the plaintiff's request for a new administrative hearing be GRANTED, the final decision

of the Commissioner denying these claims be vacated, and this case be remanded to

the Commissioner to conduct a new administrative hearing.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of September 2021.

*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge